## EVANS & CO. v. T. B. STROUD et al.

CONTRACT. *Construction. Burden of proof.* In a settlement between the attorneys of the plaintiffs and the defendants as sureties of a constable, by which the latter obtained time by giving their notes with security for the amount of the constable's indebtedness to the plaintiffs for claims placed in his hands by the plaintiffs, on some or all of which judgments had been recovered by the plaintiffs against the constable, the attorneys acknowledged in writing that they had received the notes in satisfaction of the judgments obtained against the constable, and agreed that if, upon a future settlement with the sureties and the constable, it should appear that any just and proper credits had been omitted, the same should be placed on the notes. The plaintiffs brought this suit on the notes, and the defendants pleaded in defense that the notes were given with the agreement that if, upon a future settlement, any just credits had been omitted, or any debts improperly charged, the same were to be allowed and credited, and averred that certain of the claims had no existence and had never been in the hands of the constable. *Held,* that the written agreement only stipulated for an allowance of omitted credits; that if it included an allowance for improper debits, the burden would be on the defendants to show that the items specified in the plea had no existence or had never been in the constable's hands; and that neither the receipt, nor the plea, nor the proof confined the charges to claims on which judgments had been recovered against the constable.

### FROM WILSON.

Appeal from the Chancery Court at Lebanon. B. J. TARVER, Ch.

A. B. MARTIN for complainants.

STOKES & SON for defendant.

COOPER, J., delivered the opinion of the court.

Evans & Co. placed in the hands of Thomas G. Cook, a constable, a number of claims on third persons for collection, which he failed to account for. Evans & Co. thereupon proceeded to take judgments against Cook and the sureties on his official bond, by motion, for the several claims. The sureties then entered into an arrangement with Evans & Co., through the attorneys of the latter, to obtain time on these judgments by giving notes, with good security, for the amount of the claims with interest. The notes bear date March 9, 1861, at which time they were probably drawn up, and were made payable on the 1st of February, and 1st of September, 1862, respectively. A list of the claims had been made, and was before the parties, giving the names of the original debtors and the amount due from each. The list shows that the several items were added up, with interest to December 25, 1860, and then interest computed on the aggregate sum to the maturity of the notes, and the notes given for the amount thus obtained. The notes were then taken by the makers for the purpose of obtaining the signatures of the sureties, and after being perfected were delivered to the attorneys of Evans & Co. on April 22, 1861. The attorneys gave, on that day, a receipt for the notes, describing them, and added: "Said notes are received in satisfaction of judgments obtained against Thos. G. Cook, as constable, for whom the said Stroud, Clemmons and L. N. M. Cook are sureties. Now if upon a future settlement with the

said sureties and Thos. G. Cook, it shall appear that any just and proper credits have been omitted and not allowed, then we agree, as attorneys, that the same shall be placed upon said notes." The first of the notes maturing was credited on May 6, 1867, with $125, and on December 7, 1867, with $200. The present action was brought upon the notes at law on August 22, 1867. The case was transferred to the chancery court, where, upon final hearing, a decree was rendered in favor of Evans & Co. for the balance due upon the notes, and the defendants appealed.

The defendants put in a special plea to the declaration filed in the law court, stating in substance that the notes were given for debts alleged to be in the hands of Thos. G. Cook, a constable, and for which he and the sureties on his official bond had become liable; that the amount of said debts, with interest and damages, was attempted to be stated on the day said notes bear date, and, being so stated, the amounts were added together, and notes given therefor, " with the distinct agreement in writing that if, upon a future settlement with said Thos G. Cook and his sureties, any just and proper credits had been omitted, and any debts improperly charged against him, the same were to be allowed and credited." The plea then averred that the consideration of said notes consisted of twenty-five claims, setting them out as in the above-mentioned list, and added that many of said claims had no existence, and had never been in the hands of the said Thos. G. Cook, and yet by mistake of fact, or accident and under the agreement with the attorneys of

the plaintiffs to correct all errors on a future settlement, were included in the consideration of said notes, with a similar averment as to payments. The plea undertook to set out the payments made and the claims that were never in Cook's hands.

The plaintiffs moved to strike out this plea, and, pending the argument upon the motion, the defendants applied to have the cause removed to the chancery court, and the court ordered its removal as a proper case for the cognizance of equity. The plaintiffs then replied to the plea that the notes were not founded on mistake or accident, and could not be enquired into except in conformity with the written agreement. When the case came into the chancery court an order was made, "upon motion of the defendants," referring it to the master "to take and state an account touching all the matters presented by the pleadings as made up in the circuit court." Proof was taken, and the master reported that the defendants were indebted to the plaintiffs for the balance due upon the notes, less a credit allowed for a payment on the liability. The exceptions filed by the defendants to the report only go to the proper basis of the account upon the pleadings and proof.

The plea of the defendants was that the notes were given with the agreement in writing that if, upon a future settlement, any just credits had been omitted, *and any debts improperly charged,* the same were to be allowed and credited. There never had been any settlement subsequent to the delivery of the notes. And the written agreement, embodied in the receipt of the

attorneys for those notes, was that if it shall appear that any just and proper credits have been omitted, "the same shall be placed upon said notes." This language fairly implies, what the circumstances go to show, that the particular claims upon which the constable had become · liable to the plaintiffs were agreed upon, subject only to a credit for payments shown to have been made thereon. The defendants were allowed by the master and the chancellor credit for the only payment shown. The agreement in writing does not provide for a subsequent deduction of "any debts improperly charged." It is clear, from their own testimony, that the defendants must have had before them the list of the debits at least from March 9, 1861, and probably before that date. And it is not at all probable that they would consent to execute notes for any items of debt not established to their satisfaction beforehand. There might be some doubt as to the payments, and the agreement stipulates for their allowance,

If, however, the language of the receipt be held, as claimed in the plea, to cover not only credits omitted, but any debts improperly charged against the constable, the question on the merits would be whether any of the claims, in the words of the plea, "had no existence and had never been in the hands of the said Thos. G. Cook." The burden would be upon the defendants to establish the truth of the averment. But not · a particle of evidence was introduced, or offered to show that any claim, mentioned in the list and constituting a part of the consideration of the notes, had

no existence or had never been in the hands of Cook as constable. So far as appears, the principal of the defendants had made himself liable to Evans & Co. for each and every claim specified in the list taken as the basis of the settlement closed by the notes sued on. There is not only a want of the clear testimony required to open a settled account, but the total absence of any proof tending to impeach any item of charge: *Patton* v. *Cone,* 1 Lea, 14.

It is contended in argument that the notes were given, not as stated in the plea for debts alleged to be in the hands of Cook as constable, but for judgments recovered by Evans & Co. on such claims against Cook. This line of defense is manifestly an afterthought based on the language of the receipt, taken literally, that "said notes were received in satisfaction of judgments obtained against Thos. G. Cook, as constable." But the receipt does not say that judgments had been obtained on all of the claims in the list. The notes were clearly received in satisfaction of the claims mentioned in the list, and the writing adds, in satisfaction of the, judgments recovered thereon.

One of the makers of the notes does testify that the list of claims was handed to him "to ascertain if there were such judgments and claims;" that he did partly at once, and partly after the war make an examination, and found only seven of the twenty-five items of the list in the form of judgments against the constable, the aggregate of these judgments being only $541.99. And he undertakes to add that these were all the sureties were claimed to be responsible for, and

Evans & Co. *v.* Stroud.

that when he found judgments they were to stand, and when the judgments could not be found proper credits were to be entered on the notes. But he does not know, he adds, that the judgments were not rendered, only he does know that he could not find them. He does not pretend that the facts were brought to the attention of the plaintiffs or their attordeys, and credits claimed. Three other makers of the notes were examined. who do not undertake to state that the sureties gave the notes only for claims on which judgments had been recovered by Evans & Co. against the constable. On the contrary, one of these witnesses, and the one who delivered the notes to the attorneys and took their receipt, says: "It was our understand ing, at least it was my understanding that there were a number of claims upon which no judgments had been made or taken, and that in some of the cases in which judgments had been taken we were entitled to credits, and we gave the notes with the understanding that at some future time the whole matter should be investigated, and any errors corrected. My under· standing was that whenever we found any claim that was wrong in any sense whatever, credit was to be allowed us on the notes." "The agreement." he adds, "was made at the time the notes were written, but not drawn up until the notes were delivered." The interval between the drafting of the notes and their delivery was from March 9 to April 22, about forty-four days, a sufficient time for the discovery of error, if any existed, in the items of charge.

The testimony of the attorneys is that there never

was any contest over the items of charge, and that the only matter of doubt was in reference to the credit afterwards allowed by the master. And one of these attorneys is very positive that he had before the execution of the notes recovered judgments against the constable on all the claims.

There is no error in the decree of the chancellor, and it will be affirmed with costs.